Jason M. Leviton (*pro hac vice*)
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600
jason@blockleviton.com

*Co-lead Counsel for Plaintiffs*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE BLOCK INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 5:25-cv-01262-NW<br><br>**LEAD PLAINTIFF'S OPPOSITION TO BLOCK, INC.'S MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS**<br><br>Date:   November 12, 2025<br>Time:  9:00 a.m.<br>Place: Courtroom 3 – 5th Floor<br><br>Judge:  Hon. Noël Wise |

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ....................................................... 1

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

ARGUMENT ....................................................................................................... 7

I.    Block Explicitly Exempted Actions That Include Exchange Act Claims from the Forum Provision ..................................................................................... 8

II.   Block's Interpretation of the Forum Provision Would Render it Void Under the Exchange Act's Antiwaiver Provision ........................................................ 11

III.  The Northern District of California Is the Appropriate Forum for this Action ............... 15

IV.  Block Seeks to Dismiss the Action in Its Entirety and Argues Against Severing the Federal Claims .................................................................................. 18

V.   Block's Request for Judicial Notice .................................................. 19

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Airgas, Inc. v. Air Prods. & Chems.*, Inc.,
   8 A.3d 1182 (Del. 2010) ................................................................................ 8

*In re Allion Healthcare Inc. S'holders Litig.*, C.A. No. 5022-CC,
   2011 WL 1135016 (Del. Ch. Mar. 29, 2011)............................................... 18

*Ashton Woods Holdings L.L.C. v. USG Corp.*, No. 15-CV-01247-HSG,
   2021 WL 8084334 (N.D. Cal. Apr. 5, 2021) .............................................. 16

*Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
   571 U.S. 49 (2013) ........................................................................................ 7

*Best Aviation Ltd. v. Chowdry*, No. 2:12-CV-05852-ODW,
   2012 WL 5457439 (C.D. Cal. Nov. 8, 2012) .............................................. 15

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
   73 A.3d 934 (Del. Ch. 2013)................................................................... 10, 17

*Carijano v. Occidental Petroleum Corp.*,
   643 F.3d 1216 (9th Cir. 2011) ...................................................................... 7

*City of Milwaukee v. Illinois & Michigan*,
   451 U.S. 304 (1981)...................................................................................... 11

*Cooper v. Tokyo Elec. Power Co., Inc.*,
   860 F.3d 1193 (9th Cir. 2017) ................................................................ 15, 16

*Greene v. Harley-Davidson, Inc.*,
   965 F.3d 767 (9th Cir. 2020) ....................................................................... 13

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)........................................................................................ 7

*Haynsworth v. The Corp.*,
   121 F.3d 956 (5th Cir. 1997) ....................................................................... 14

*Hill Int'l, Inc. v. Opportunity Partners L.P.*,
   119 A.3d 30 (Del. 2015) ........................................................................... 8, 10

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ....................................................................... 19

*Lee v. Fisher*, No. 20-CV-06163-SK,
   2021 WL 1659842 (N.D. Cal. Apr. 27, 2021) ..................................... *passim*

*Lee v. Fisher*,
   70 F.4th 1129 (9th Cir. 2023) ...................................................................... *passim*

*Petersen v. Boeing Co.*,
   715 F.3d 276 (9th Cir. 2013) ......................................................................... 8

*Salzberg v. Sciabacucchi*,
227 A.3d 102 (Del. 2020) ........................................................................ 14

*Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*,
23 F.4th 714 (7th Cir. 2022) .................................................................... 15

*Sec. Inv'r Prot. Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985) ................................................................. 15

*Shearson/Am. Exp., Inc. v. McMahon*,
482 U.S. 220 (1987) ................................................................................ 13

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ................................................................. 19

*Sobel on Behalf of SolarWinds Corp. v. Thompson*, No. 1:21-CV-272-RP,
2023 WL 4356066 (W.D. Tex. July 5, 2023) .......................................... 14

*St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06CV688SWK,
2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ............................................ 13

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ...................................................................... 12

*Yan Guo v. Kyani, Inc.*,
311 F. Supp. 3d 1130 (C.D. Cal. 2018) ..................................................... 8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
282 F. Supp. 3d 1074 (N.D. Cal. 2017)) ................................................. 19

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir.2007) .................................................................... 19

**Statutes and Rules**

15 U.S.C. § 78aa ................................................................................ 1, 8, 11

15 U.S.C. § 78cc .............................................................................. 1,11, 13

28 U.S.C. § 1331 ....................................................................................... 15

28 U.S.C. § 1367 ....................................................................................... 15

Fed. R. Civ. P. 45(c) ................................................................................ 16

U.S. Const. Art. VI, cl. 2 .......................................................................... 11

**Other Authorities**

Hazard & Moskovitz, *An Historical and Critical Analysis of Interpleader*,
52 CALIF. L. REV. 706 (1964) ................................................................ 17

Richard D. Freer, *Avoiding Duplicative Litigation: Rethinking Plaintiff Autonomy and the Court's Role in Defining the Litigative Unit*, 50 U. PITT. L. REV. 809 (1988) ................... 18

iii

## STATEMENT OF ISSUES TO BE DECIDED

1.       Whether Block, Inc.'s ("Block" or the "Company") exclusive forum provision contained in the Company's Bylaws (the "Forum Provision") applies to Lead Plaintiff James Kelly's ("Plaintiff") Verified Shareholder Derivative Complaint (the "Complaint," starting the "Action"), which seeks to enforce liability on Individual Defendants Jack Dorsey, James McKelvey, Roelof Botha, Amy Brooks, Shawn Carter, Paul Deighton, Randal Garutti, Mary Meeker, Anna Patterson, Sharon Rothstein, Lawrence Summers, David Viniar, Darren Walker, and Amrita Ahuja (collectively the "Individual Defendants") for violations of duties arising under Sections 10(b), 14(a), and 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act").

2.       Whether the Court should dismiss the Complaint on the grounds of *forum non conveniens*.

## PRELIMINARY STATEMENT

Block's Motion fails because Block's forum selection provision explicitly states that "any action brought to enforce a duty or liability created by the Exchange Act" is not subject to the Forum Provision and need not be brought in Delaware (Block's state of incorporation). Def. Block's Forum Motion to Dismiss ("Forum Mot.") at 7, Dkt. 54. Indeed, the very bylaw language Block invokes as the basis for its Motion renders it inapplicable to this Action, which involves claims under Sections 10(b), 14(a), and 29(b) of the Exchange Act. That should end the Court's analysis.

Even absent this glaring problem, applying Block's forum selection bylaw to this action would violate the Exchange Act's antiwaiver provision because it would effectively authorize Block to waive compliance with the substantive obligations imposed by Section 10(b) and Rule 10b-5. *See* 15 U.S.C. § 78cc(a) ("Any condition, stipulation, provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, … shall be void."). If derivative Section 10(b) claims cannot be brought in federal district court, they cannot be brought anywhere because federal district courts have "exclusive jurisdiction of violations" of the Exchange Act. 15 U.S.C. § 78aa(a).   The cases Block cites to support its argument to the contrary are entirely distinguishable.

1

Finally, forcing all, or part, of this action to be litigated in Delaware would result in expensive, multi-district litigation wasting the resources of all parties and multiple courts. All logistical and practical considerations weigh in favor of the Northern District of California as the most convenient and efficient forum to hear the Action.

Block's motion to dismiss for *forum non conveniens* is thus without merit.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Block, co-founded by Defendants Jack Dorsey and James McKelvey in February 2009 as Square Inc., launched Cash App in 2013 to provide financial services to the "unbanked" and the "underbanked" using "frictionless onboarding," a process of intentionally seeking minimum information to sign on new customers. Verified Shareholder Derivative Complaint ("Complaint") ¶¶2-3, 204. This populist banking approach helped fuel growth in user numbers that the Company was dependent upon for its valuation—increasing monthly transacting actives from 17.6M in 2019 to over 53.1M in 2023. *Id*. ¶¶4-6, 42-51. However, Block's intentional lack of data collection from its users violated numerous financial laws, rules, and regulations, and facilitated fraud and other criminal activity (i.e., money laundering, drug dealing, sex trafficking, etc.). *Id*. ¶¶4-6, 52-64.

A years-long parade of red flags repeatedly alerted Block's Board of the Directors (the "Board") to the lack of effective compliance controls at the Company, yet the Board failed to ensure that Block complied with its legal and regulatory obligations. *Id*. ¶¶7-8, 53-174. Worse still, the Defendants caused the Company to make numerous false and misleading statements to the Company's investors concerning the state of the Company's compliance program and user growth (*id*. ¶¶13, 71-82, 193, 248-266) while (i) Defendants Dorsey and McKelvey sold over $1 Billion of Block stock at artificially inflated prices (*id*. ¶¶15, 243-47) and (ii) the Board and management caused the Company to repurchase 7,316,000 shares of its own stock at artificially inflated prices for over $500 million. *Id*. ¶¶334-38.

On March 23, 2023, after a two-year investigation that involved dozens of interviews with former Block employees, partner and industry experts—as well as an extensive review of regulatory and litigation records, and Freedom of Information Act and public records requests— Hindenburg Research published a report titled "*Block: How Inflated User Metrics and*

OPPOSITION TO BLOCK, INC.'S MOTION FOR *FORUM NON CONVENIENS*
Case No. 5:25-cv-01262-NW

*'Frictionless' Fraud Facilitation Enabled Insiders To Cash Out Over $1 Billion*" (the "Hindenburg Report"). *Id*. ¶9. That report revealed that Block maintained a "Wild West" approach to compliance, allowing fraud and criminal activity to proliferate on the Cash App platform while wildly overstating the Company's genuine user counts. *Id*. The Hindenburg Report found that Block's "magic" was not attributable to its innovation, but rather to its "willingness to facilitate fraud against consumers and the government, avoid regulation, dress up predatory loans and fees as revolutionary technology, and mislead investors with inflated metrics." *Id*. ¶190. The Hindenburg Report further revealed that Block has continually overstated the number of Cash App's users through the utilization of the "transacting active users" metric that failed to account for multiple accounts associated with a single active user, thereby artificially inflating estimated engagement with the platform and artificially depressing costs Block paid to acquire new users on a per user basis. *Id*. ¶¶191-92.

On July 17, 2023, Lead Plaintiff James F. Kelly ("Plaintiff") issued a written demand to Block under Section 220 of the Delaware General Corporation Law ("DGCL") seeking to inspect the Company's books and records to, *inter alia*, investigate possible breaches of fiduciary duty, mismanagement, and other violations of law by members of Block's Board of Directors and management. *Id*. at 6.

The consequences of Defendants' oversight decisions materialized over the next year and half. In December 2023, the Consumer Financial Protection Bureau's ("CFPB") Office of Enforcement informed Block that it was considering recommending that the Commission take legal action against the Company related to Block's handling of fraud on its platform. *Id*. ¶219. On February 16, 2024, *NBC News* reported that the U.S. Department of Treasury's Financial Crimes Enforcement Network was exploring allegations by two whistleblowers that Cash App performed inadequate due diligence on customers, "opening the door to money laundering, terrorism financing, and other illegal activities." *Id*. ¶¶10, 208. On May 1, 2024, *NBC News* further reported that federal prosecutors were investigating allegations of Block's "widespread and yearslong compliance lapses" known to Block's leadership and the Board. *Id*. ¶¶10, 210. In July 2024, the U.S. Securities and Exchange Commission ("SEC") sent an investigative inquiry to

1    Block related to the allegations raised in the Hindenburg Report, as well as the Company's

2    compliance and risk practices, and related disclosures. *Id*. ¶230.

3         On January 15, 2025, the Conference of State Bank Supervisors announced that Block had

4    agreed to pay an additional $80 million fine in a settlement with 48 U.S. state financial regulators

5    for "violations of the Bank Secrecy Act ('BSA') and anti-money laundering ('AML') laws that

6    safeguard the financial system from illicit use." *Id*. ¶225. On January 16, 2025, the CFPB issued a

7    consent order against Block, finding that Block had violated the Consumer Financial Protection

8    Act of 2010 in four different ways—by (a) failing to provide adequate customer service, (b) failing

9    to take appropriate measures to prevent fraud on Cash App, (c) failing to investigate and resolve

10   disputes about unauthorized transactions in a timely manner, and (d) failing to provide appropriate

11   fraud and error resolution measures for customers.  The CFPB also ordered Block to pay $175

12   million in restitution and fines. *Id*. ¶¶11, 220-24.

13        On January 17, 2025, a Block investor filed a putative class action in this Court against

14   Defendants Jack Dorsey and Amrita Ahuja and Nominal Defendant Block alleging violations of

15   Section 10(b) of the Exchange Act and SEC Rule 10b-5 for making false and misleading

16   statements concerning, *inter alia*, Block's widespread and years-long compliance lapses with

17   Square and Cash App, including failing to conduct basic due diligence regarding its customers'

18   identities or the nature of customer transactions so as to prevent the platforms from being used for

19   illegal or illicit activities (the "Securities Class Action"). *See Gonsalves v. Block et al.*, No. 5:25-

20   cv-00642-NW (N.D. Cal. Jan. 17, 2025). Four separate derivative actions were subsequently filed

21   in this Court.[1]

22

23

24

25

26   _____

     [1]     *Patel v. Dorsey et al.*, Case No. 5:25-cv-01262-NW (N.D. Cal. Feb. 5, 2025) (the "*Patel*
27   Action"); *Wallace v. Ahuja et al.*, Case No. 5:25-cv-02202-NW (N.D. Cal. Mar. 4, 2025) (the
     "*Wallace* Action"); *Roy v. Dorsey et al.*, Case No. 5:25-cv-02810-NW (N.D. Cal. Mar. 25, 2025)
28   (the "*Roy* Action"); and *Li v. Dorsey et al.*, Case No. 4:25-cv-03425-DMR (N.D. Cal. Apr. 17,
     2025) (the "*Li* Action).

On February 4, 2025, Block filed its filed Annual Report on Form 10-K with the SEC incorporating by reference the most recent[2] Amended and Restated Bylaws of Block, Inc. which included the following exclusive forum provision (the "Forum Provision"):

> SECTION 7.7. <u>Exclusive Forum</u>. Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (A) any derivative action or proceeding brought on behalf of the Corporation, (B) any action asserting a claim of breach of a fiduciary duty owed by any director, stockholder, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (C) any action asserting a claim against the Corporation or any director, stockholder, officer or other employee of the Corporation arising pursuant to any provision of the DGCL, the Certificate of Incorporation or these Bylaws (as either may be amended from time to time) or (D) any action asserting a claim against the Corporation or any director, stockholder, officer or other employee of the Corporation governed by the internal affairs doctrine shall, to the fullest extent permitted by law, be the Court of Chancery of the State of Delaware (or, if the Court of Chancery does not have jurisdiction, another State court in Delaware or the federal district court for the District of Delaware), except for, as to each of (A) through (D) above, any claim as to which such court determines that there is an indispensable party not subject to the jurisdiction of such court (and the indispensable party does not consent to the personal jurisdiction of such court within ten (10) days following such determination), which is vested in the exclusive jurisdiction of a court or forum other than such court or for which such court does not have subject matter jurisdiction.
>
> Unless the Corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the sole and exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act of 1933, as amended, against any person in connection with any offering of the Corporation's securities, including, without limitation and for the avoidance of doubt, any auditor, underwriter, expert, control person, or other defendant.
>
> Any person or entity purchasing, holding or otherwise acquiring any interest in any security of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 7.7. This provision shall be enforceable by any party to a complaint covered by the provisions of this Section 7.7. ***For the avoidance of doubt, nothing contained in this Section 7.7 shall apply to any action brought to enforce a duty or liability created by the Exchange Act or any successor thereto***.

(emphasis added).[3]

On April 10, 2025, the New York State Department of Financial Services (i) issued a consent order against Block identifying significant deficiencies with Block's financial controls,

---

[2]     Block last amended its bylaws on October 20, 2022. *See* Block, Inc., Current Report (Form 8-K) (Oct. 21, 2022), Forum Mot. Exhibit 1.

[3]     *See* Block, Inc., Annual Report (Form 10-K) (Feb. 24, 2025) at 152.

including with respect to Block's Know Your Customer practices, transaction monitoring practices, and suspicious activity reporting requirements from 2018 through at least 2021, and (ii) ordered Block to pay $40 million in fines. Compl. ¶¶12, 228-29.

Defendants' repeated failures to ensure that Block complied with governing laws and regulations has exposed Block to reputational harm and has subjected the Company to multiple investigations by government agencies, adverse regulatory actions, and penalties exceeding $295 million. The Company also faces additional expenses associated with the defense and further potential damages in the Securities Class Action. *Id.* ¶14.

On April 16, 2025, the Court entered an Order relating the *Patel Action*, the *Wallace Action*, and the *Roy Action* and further relating the derivative actions to the Securities Class Action. Dkt. 18.

On April 24, 2025, after nearly two years of investigation, and with the benefit of a fulsome inspection of internal company records totaling thousands of pages, Plaintiff filed the Complaint, alleging (i) violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9; (ii) violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; (iii) violations of Section 29(b) of the Exchange Act, 15 U.S.C. § 78cc(b); (iv) breaches of fiduciary duties; and (v) insider trading violations from February 2019 through the present. *See Kelly v. Dorsey*, No. 4:25-cv-3165 (N.D. Cal. Apr. 24, 2025) (Dkt. 1).

On May 7, 2025, the derivative actions were consolidated and related to the Securities Class Action. Dkt. 22. On June 11, 2025, Plaintiff was appointed as Lead Plaintiff, his counsel was appointed as Co-Lead Counsel, and the Court set a schedule for Defendants' forthcoming motion(s) to dismiss. Dkt. 50.

On July 29, 2025, Nominal Defendant Block moved separately from the Individual Defendants to dismiss the complaint in its entirety based solely on the common law principle of *forum non conveniens* ("Block's Forum Motion"). Dkt. 54. For the following reasons, Block's Forum Motion must be denied.

## ARGUMENT

The purpose of the doctrine of *forum non conveniens* is to root out cases brought to harass a defendant by "forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The doctrine is a "drastic exercise of the court's inherent power because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).[4] Typically, to prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum and that the balance of private and public interest factors favors dismissal. *Id*. Only if the Court determines that the plaintiff violated a valid, applicable forum selection clause can the burden of proof shift to the plaintiff. *See Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013); *Lee v. Fisher*, 2021 WL 1659842, at *2 (N.D. Cal. Apr. 27, 2021) ("*Lee I*"), *aff'd en banc*, 70 F.4th 1129 (9th Cir. 2023) ("*Lee II*") ("The Court must consider two factors: (1) whether the lawsuit falls within the scope of the forum-selection clause, and if it does, (2) whether the clause is valid and enforceable.").

Here, Plaintiff brought this Action in the *most convenient possible forum* for the Defendants because (a) there is currently pending litigation here and (b) the Company's headquarters, Individual Defendants, and the location of much of the wrongdoing described in the Action are all located in this District. Block asks the Court to ignore these efficiencies by citing the Forum Provision in its bylaws. But the plain language of the Company's bylaws makes clear the Forum Provision does not apply to this Action, so Plaintiff was not under any contractual obligation to file the Action in a different forum. All logistical and practical considerations weigh in favor of this Court as the most convenient and efficient forum to hear the Action, and no alternative forum is adequate to resolve the Action.

Therefore, Plaintiff respectfully submits that Block's motion to dismiss for *forum non conveniens* should be denied.

---

[4]    All internal quotations and citations have been omitted unless otherwise indicated.

1

2

I.    **Block Explicitly Exempted Actions That Include Exchange Act Claims from the Forum Provision**

3    The first issue the Court must address is whether Plaintiff's claims fall within the Forum

4    Provision's scope. *See Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013). If Plaintiff's

5    claims are outside the scope of the Forum Provision, the Court's analysis concludes and dismissal

6    is not warranted. *See Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1141–43 (C.D. Cal. 2018).

7    Since Block is a Delaware corporation, the Court should apply Delaware's rules of contract

8    interpretation. *Lee II*, 70 F.4th at 1138–39 ("'Corporate charters and bylaws are contracts among

9    a corporation's shareholders.'") (quoting *Airgas, Inc. v. Air Prods. & Chems.*, Inc., 8 A.3d 1182,

10   1188 (Del. 2010)). "Under these rules of interpretation, the '[w]ords and phrases used in a bylaw

11   are to be given their commonly accepted meaning unless the context clearly requires a different

12   one or unless legal phrases having a special meaning are used.'" *Id*. If the text of a corporate bylaw

13   provision is unclear, Delaware courts resolve any doubt in favor of the stockholders' rights. *Airgas*,

14   8 A.3d at 1188; *Hill Int'l, Inc. v. Opportunity Partners L.P.*, 119 A.3d 30, 38 (Del. 2015).

15   Here, the Forum Provision explicitly states that it does not apply to actions involving the

16   Exchange Act (like this one). The Forum Provision calls for "the Court of Chancery of the State

17   of Delaware (or, if the Court of Chancery does not have jurisdiction, another State court in

18   Delaware or the federal district court for the District of Delaware)" to be the "sole and exclusive

19   forum for. . . any derivative action or proceeding brought on behalf of the Corporation," ***except***

20   ***for any claim*** "***which is vested in the exclusive jurisdiction of a court or forum other than such***

21   ***court or for which such court does not have subject matter jurisdiction.***" (emphasis added). If

22   that were not clear enough, the final clause of the Forum Provision states, "***For the avoidance of***

23   ***doubt, nothing contained in this Section 7.7 shall apply to any action brought to enforce a duty***

24   ***or liability created by the Exchange Act or any successor thereto***." (emphasis added).[5] So on its

25

26   [5]    Notably, the "***brought to enforce a duty or liability created by the Exchange Act***"
     language of the Forum Provision appears to be taken directly from Section 27 of the Exchange
27   Act, which grants federal courts exclusive jurisdiction over Exchange Act claims. *Compare* 15
     U.S.C. § 78aa ("The district courts of the United States [. . .] shall have exclusive jurisdiction of
28   violations of [the Exchange Act] and of all suits in equity and actions at law ***brought to enforce***
     ***any liability or duty created by*** [the Exchange Act].") (emphasis added).

8

face, the Forum Provision twice carves out this Action from its scope: first, because the Delaware Court of Chancery lacks jurisdiction to adjudicate Plaintiff's Exchange Act Claims, which can only be brought in federal district court;[6] and second, by unequivocally stating it does not apply to this Action because it seeks to enforce the Individual Defendants' duties under—liability for violations of—Sections 10(b), 14(a), and 29(b) of the Exchange Act.

Block ignores the plain language of its Forum Provision and argues instead that *Lee I* and *Lee II* compel dismissal of this Action. But those cases do not apply here.

Block relies on *Lee II* to argue that courts in this Circuit generally enforce exclusive forum bylaws requiring derivative lawsuits to proceed in Delaware. Forum Mot. 2, 7. But the text of The Gap Inc.'s ("Gap") forum-selection clause analyzed in *Lee II* differs materially from Block's Forum Provision. Gap's bylaw flatly prevented ***any*** derivative action from being heard anywhere but the Delaware Court of Chancery:

> Section 5. <u>Forum Selection</u>.
> Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action or proceeding asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action or proceeding asserting a claim against the Corporation arising pursuant to any provision of the Delaware General Corporation Law or the Corporation's Certificate of Incorporation or these Bylaws, or (iv) any action or proceeding asserting a claim against the Corporation governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein.

*Lee I*, 2021 WL 1659842, at *2 (N.D. Cal. Apr. 27, 2021).

The lack of any exception in Gap's forum-selection clause—compelling any derivative action, without limitation, to be filed in the Court of Chancery of the State of Delaware—was critical to the analysis in *Lee*. There, the plaintiff did not (and could not) argue that her claim fell outside the scope of Gap's bylaw. *Id.* ("Here, Plaintiff does not dispute that the suit falls within the scope of the forum selection clause.").

---

[6]    Block agrees on this point. *See* Forum Mot. 2 ("To be sure, the Chancery Court of the State of Delaware does not have jurisdiction over federal securities claims . . . .").

Block's Exclusive Forum Provision bears no resemblance to the Gap provision in *Lee I* and *II*. The Gap bylaw contained no federal carve-outs or alternative jurisdiction considerations. *See Lee I*, 2021 WL 1659842, at *2 (distinguishing Gap's bylaw from the plaintiff's cited cases where "the forum-selection clause at issue provided that, if there were claims that were not within the state court's jurisdiction, then the forum selection clause directed that the claims should be brought in the federal district court for the District of Delaware."). Here, Block admits that its Exclusive Forum Provision contains carveouts for Exchange Act claims. *See* Forum Mot. 2, 3 (". . . the exclusive forum provision's carveout for Exchange Act claims . . . the carveout for Exchange Act claims added in 2021."). Moreover, Block's Forum Provision further evidences an intent that disputes under the federal securities laws be brought in federal court by mandating that claims under the Securities Act of 1933 be brought in federal district court.[7] Gap's forum provision contained no such clause. Nor did Gap's forum provision contain a nullification clause to ensure that stockholders know that the bylaw is inapplicable to *actions* enforcing duties or liabilities under the Exchange Act.[8]

To determine the scope of Block's Forum Provision, the Court must analyze and interpret the specific, contractual text of the Company's bylaw, because Block's bylaws form a contractual relationship between its stockholders and the Company. *See Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 955 (Del. Ch. 2013); *Hill*, 119 A.3d at 38 (Del. 2015). The specific language of Block's bylaws differs materially from Gap's, rendering Block's analogy to the *Lee* cases inapposite. Because the plain text of Block's Forum Provision does not apply to this Action, *Lee II* is inapplicable, and Block's Forum Motion should be denied.

---

[7]    *See* Block's Exclusive Forum Provision ("Unless the Corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States of America shall be the sole and exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act of 1933, as amended, against any person in connection with any offering of the Corporation's securities, including, without limitation and for the avoidance of doubt, any auditor, underwriter, expert, control person, or other defendant.").

[8]    *Contra* Block's Exclusive Forum Provision ("For the avoidance of doubt, nothing contained in this Section 7.7 shall apply to any action brought to enforce a duty or liability created by the Exchange Act or any successor thereto.").

1

## II.    Block's Interpretation of the Forum Provision Would Render it Void Under the

2         Exchange Act's Antiwaiver Provision

3              Interpreting the Forum Provision in the way Block suggests would violate the text of the

4   Forum Provision (*supra* Part I), militate against the private interests of the parties (*infra* Part III),

5   and contravene public policy by preventing any stockholder from pursuing derivative Section

6   10(b) claims on behalf of the Company. Courts do not enforce forum provisions where their

7   application would contravene a strong public policy, such as one declared by statute. *Lee II*, 70

8   F.4th at 1143. Indeed, where "enforcing a forum-selection clause would conflict with an applicable

9   federal antiwaiver provision, a court is bound to enforce the statute, notwithstanding the strong

10  policy in favor of enforcing forum-selection clauses." *Id.* at 1150, n.17.[9]

11             Section 27 of the Exchange Act grants federal courts exclusive jurisdiction over claims

12  arising under the Exchange Act. 15 U.S.C. § 78aa ("The district courts of the United States . . .

13  shall have exclusive jurisdiction of violations of this chapter or the rules and regulations

14  thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty

15  created by this chapter or the rules and regulations thereunder."). And Section 29(a) of the

16  Exchange Act contains a forceful antiwaiver provision that voids any private agreement

17  endeavoring to waive compliance with the statute. 15 U.S.C. § 78cc(a) ("Any condition,

18  stipulation, or provision binding any person to waive compliance with any provision of this chapter

19  or of any rule or regulation thereunder, or of any rule of a self-regulatory organization, shall be

20  void."). Thus, if—as Block contends—the Forum Provision mandates this Action be brought in

21  the Court of Chancery (which lacks jurisdiction over Exchange Act claims), then the Company's

22  Section 10(b) claims against the Individual Defendants cannot be brought in *any* forum, thereby

23  violating the antiwaiver provision of the Exchange Act.

24

25

26  [9]      Federal common law, judge-made policy, must yield—in the absence of comity principles
    favoring enforcement—when it contravenes a federal statutory right. *See* U.S. Const. Art. VI, cl.
27  2; *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 317 (1981) ("[I]t is for Congress, not
    federal courts, to articulate the appropriate standards to be applied as a matter of federal law.").
28

1    To circumvent this obstacle, Block repeatedly cites the analysis in *Lee I* and *Lee II* for the

2    proposition that Plaintiff could bring the Exchange Act claims alleged in this Action directly.[10]

3    This is incorrect.

4    The Ninth Circuit's analysis in *Lee II* is inapposite, because it was specific to the plaintiff's

5    theory of liability.  70 F.4th at 1138. There, the Ninth Circuit concluded the Gap officers' and

6    directors' substantive obligations under § 14(a) and Rule 14a-9 could be enforced through a direct

7    action in federal court (instead of the derivative action brought by Lee). *Id.* at 1139-40. Applying

8    the *Tooley* test under Delaware law,[11] the Court concluded that the plaintiff could assert her claims

9    directly "because her complaint is based on the theory that Gap's shareholders were denied the

10   right to a fully informed vote at the 2019 and 2020 annual meetings."  Because "Lee and other

11   shareholders suffered the alleged harm—a proxy nondisclosure injury in violation of § 14(a) that

12   interfered with their voting rights and choices—and would receive the benefit of the remedy—the

13   equitable or injunctive relief sought in the complaint," the claims could proceed directly and thus

14   the inability to pursue the claims derivatively did not "effect[] a functional waiver of compliance

15   with the substantive obligations imposed by § 14(a) and Rule 14a-9." *Id.*

16   Unlike in *Lee*, Plaintiff here brings Section 10(b) claims derivatively on behalf of Block to

17   recover losses the **Company** suffered when the Individual Defendants caused Block to repurchase

---

18

19   [10]    *See* Forum Mot. 2 ("As the Ninth Circuit recognized in precisely this context, if Block

20   shareholders wish to bring these claims, they can be brought as direct claims. See *Lee*, 70 F.4th at 1140 (holding that plaintiff "can bring her action against Gap under § 14(a) and Rule 14a-9 as a

21   direct action" in federal court). Indeed, the plaintiffs in the Gonsalves putative class action before this Court are litigating direct federal securities law claims relating to the same core allegations as

22   this case. *Gonsalves v. Block, Inc.*, Case No. 5:25-cv-00642-NW (N.D. Cal.)."); Forum Mot. 6 ("This dismissal should include Plaintiffs' Exchange Act claims, which have been or can be

23   brought as direct claims . . . ."); Forum Mot. 10 ("Plaintiffs' Exchange Act claims here can be brought as direct shareholder claims (as opposed to derivative claims purportedly brought by

24   shareholders on the corporation's behalf). *Lee*, 70 F.4th at 1139. Indeed, different plaintiffs are currently litigating a direct Section 10(b) claim in this Court relating to the same core allegations

25   at issue in this case.").

26   [11]    Under *Tooley*, the classification of an action as direct or derivative turns solely on two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders,

27   individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845

28   A.2d 1031, 1033 (Del. 2004).

its own shares at artificially inflated prices. Because Block suffered the harm and would receive the benefit of a recovery under Section 10(b), this action can only be brought derivatively, not directly.

Citing to the Securities Class Action being litigated by different plaintiffs in this Court, Block argues that "Plaintiffs' Exchange Act claims here can be brought as *direct* shareholder claims (as opposed to derivative claims purportedly brought by shareholders on the corporation's behalf)." Forum Mot. 10 (emphasis in original). This is incorrect.

The Securities Class Action seeks to recover for harm suffered by a *class* of Block stockholders, who purchased Block securities at artificially inflated prices and stand to benefit from any recovery of monetary damages. They seek damages for *themselves*, not (as Plaintiff does here) the Company. This distinction is highlighted by the long-recognized conflict of interest that prevents a plaintiff from bringing Exchange Act claims both against and on behalf of the same corporation. *See, e.g., St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 2006 WL 2849783, at *8 (S.D.N.Y. Oct. 4, 2006) ("Courts in this Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest. As a result of this impermissible conflict, some courts have refused to certify a plaintiff as a class representative, while others have refused to allow the derivative action to proceed.").

Block's reliance on a passage of dicta in *Lee II* to argue that Plaintiff is able to enforce the substantive obligations of each of his Exchange Act claims under Delaware law, Forum Mot. 10-11, is inapposite. First, as discussed, *Lee*'s analysis was limited to Section 14(a), relied on the ability to bring Section 14(a) claims directly, and does not apply equally to Section 10(b). Second, the substantive requirements of Section 29(a) require agreements (such as forum selection clauses) to allow plaintiffs to "recover under the Exchange Act." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 228 (1987) ("[W]hether the agreement weakens their ability to recover under the Exchange Act […] is grounds for voiding the agreement under § 29(a).") (cleaned up). Third, Plaintiff "is the master of his complaint, and he owns the allegations that have landed him in federal court." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020). Fourth, and finally, the Delaware Supreme Court has explicitly stated that forum-selection provisions "are process-

oriented, and are not substantive" mechanisms, which "regulate where stockholders may file suit, not whether the stockholder may file suit or the kind of remedy that the stockholder may obtain on behalf of herself or the corporation." *Salzberg v. Sciabacucchi*, 227 A.3d 102, 137 (Del. 2020). Block's contention that its Forum Provision forces Plaintiff to re-plead his Exchange Act claims as some form of hybrid state law claim to be litigated in state court is contradictory to federal and Delaware law and would eviscerate Plaintiff's ability to recover damages available under the Exchange Act.

Block also cites *Sobel on Behalf of SolarWinds Corp. v. Thompson*, 2023 WL 4356066 (W.D. Tex. July 5, 2023) as an example of another court dismissing derivative Section 10(b) and 14(a) claims pursuant to a Delaware exclusive forum provision. Forum Mot. 10. But *SolarWinds* is readily distinguishable and predicated on a fundamental misunderstanding of the derivative/direct distinction under Delaware law. First, the *SolarWinds* court believed dismissal was mandated by controlling Fifth Circuit precedent, *Haynsworth v. The Corp.*, 121 F.3d 956, 968–69 (5th Cir. 1997). And *Haynsworth*, which enforced a contractual forum selection clause to preclude Exchange Act claims, specified a *foreign* forum and *foreign* governing law (so the parties had agreed the Exchange Act did not govern their relationship). *See SolarWinds*, 2023 WL 4356066, at *5; *cf. Seafarers Pension Plan on behalf of Boeing Co. v. Bradway*, 23 F.4th 714, 727 (7th Cir. 2022) (distinguishing *Haynsworth* and other cases on their international foundations and concluding that the Exchange Act's antiwaiver provision "prevent[s] parties from opting out of the federal laws in favor of state law, no matter how similar or strong the state-law rights and remedies are."). Second, *SolarWinds* held that because the venue provision "does not prevent [plaintiff] from directly pursuing Exchange Claims in any federal court," it did not contravene the Exchange Act's antiwaiver provision. *Id.* But this conclusion fails to recognize the important distinction (recognized by *Lee II* relying on the *Tooley* test) between derivative and direct actions—it is about who is harmed and who will be remedied.

Because Plaintiff's action to enforce the substantive obligations of Section 10(b) of the Exchange Act cannot be brought as a direct action, dismissing this Action based on Block's Forum

1    Provision would violate the Exchange Act's antiwaiver provision. Interpreting and applying the

2    Forum Provision in the manner Block suggests renders it void.

3    **III.    The Northern District of California Is the Appropriate Forum for this Action**

4              This Court is the most suitable court to hear this Action. Absent a forum selection clause

5    compelling the filing of an action elsewhere, Block faces a high burden under the doctrine of *forum*

6    *non conveniens* to have the action dismissed. *See Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d

7    1193, 1211 (9th Cir. 2017) ("Defendants have the heavy burden of showing that the plaintiff's

8    choice of forum results in oppressiveness and vexation out of all proportion to the plaintiff's

9    convenience."); *cf. Best Aviation Ltd. v. Chowdry*, 2012 WL 5457439, at *6 (C.D. Cal. Nov. 8,

10   2012) ("[R]esolving a dispute in your home forum is hardly inconvenient.").

11             Plaintiff has sufficiently pleaded Exchange Act claims against the Individual Defendants[12]

12   giving this Court subject matter jurisdiction over the federal claims of the Action (28 U.S.C. §

13   1331) and personal jurisdiction over the defendants. *See Sec. Inv'r Prot. Corp. v. Vigman*, 764

14   F.2d 1309, 1315-16 (9th Cir. 1985) ("Where a federal statute such as Section 27 of the [Exchange]

15   Act confers nationwide service of process, the question becomes whether the party has sufficient

16   contacts with the United States, not any particular state . . . so long as a defendant has minimum

17   contacts with the United States, Section 27 of the Act confers personal jurisdiction over the

18   defendant in any federal district court.").

19             The Court has supplemental jurisdiction over the state claims as well. *See* 28 U.S.C. § 1367

20   ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall

21   have supplemental jurisdiction over all other claims that are so related to claims in the action within

22   such original jurisdiction that they form part of the same case or controversy under Article III of

23   the United States Constitution."); *accord In re Wells Fargo & Co. S'holder Derivative Litig.*, 282

24   F. Supp. 3d 1074, 1107 (N.D. Cal. 2017) ("As the Court concludes that Plaintiffs adequately state

25

26

27   [12]    S*ee* Plaintiff's concurrently-filed Opposition to Block Inc.'s and the Individual
     Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6),
28   incorporated by reference herein.

1  claims under Sections 12(b), 14(a), and 20A, the Court denies the Director Defendants and Ms.

2  Tolstedt's request to decline jurisdiction over Plaintiffs' state law claims.").

3        Contrary to Block's assertions,[13] logistical and practical considerations heavily favor the

4  Northern District of California over Delaware. In analyzing the appropriateness of a selected

5  forum, courts will consider (1) the residence of the parties and the witnesses; (2) the forum's

6  convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether

7  unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the

8  enforceability of the judgment; and (7) all other practical problems that make trial of a case easy,

9  expeditious and inexpensive. *Cooper*, 860 F.3d at 1211. Here, each of these factors militates in

10 favor of the Northern District of California.

11       First, this District is the most convenient possible forum for Block and the Individual

12 Defendants. Block's principal executive offices are located in this District and the actions and

13 violations of law alleged in the Complaint largely occurred in this District. Compl. at ¶¶ 19-20, 39.

14 Accordingly, the records, evidence, and witnesses needed to prove Plaintiff's case overwhelmingly

15 reside in this District. The location of the witnesses is especially important for any non-party

16 employees of Block that might be needed for testimony at deposition or trial—or former

17 employees still residing in the area. If Plaintiff is forced to bring this Action in Delaware, then he

18 could lose the ability to compel any unwilling witnesses to testify. *See* Fed. R. Civ. P. 45(c) ("For

19 a Trial, Hearing, or Deposition. A subpoena may command a person to attend a trial, hearing, or

20 deposition only as follows: (A) within 100 miles of where the person resides, is employed, or

21 regularly transacts business in person; or (B) within the state where the person resides, is

22 employed, or regularly transacts business in person, if the person . . ."); *Ashton Woods Holdings*

23 *L.L.C. v. USG Corp.*, 2021 WL 8084334, at *1 (N.D. Cal. Apr. 5, 2021) ("Rule 45 contains no

24 exception that would permit the Court to decree that out-of-state witnesses are within 100 miles of

25 a trial in Oakland, California because streaming facilities exist in their states, and the fact that the

26

27 ──────────────
   [13]    *See* Forum Mot. 9 ("Logistical and practical considerations also do not favor California

28 over Delaware").

witnesses at issue are beyond that radius and unwilling to travel voluntarily to this district to testify disposes of Plaintiffs' motion.").

      Second, both judicial resources and Defendants' resources will be more efficiently utilized by litigating this Action in this District. At the time of filing the Complaint, both the Securities Class Action and the earlier filed derivative actions were already being litigated in this District and already related by the Court. Accordingly, the most efficient jurisdiction possible for Plaintiff to file this Action was the Northern District of California.

      Multi-jurisdictional litigation is expensive and unnecessary for the Company. *See Boilermakers*, 73 A.3d  at 944 ("The boards of Chevron and FedEx argue that multiforum litigation, when it is brought by dispersed stockholders in different forums, directly or derivatively, to challenge a single corporate action, imposes high costs on the corporations and hurts investors by causing needless costs that are ultimately born by stockholders . . . .").[14] Whenever a corporation is faced with substantively similar litigation in multiple courts, it must incur the cost of hiring lawyers in every applicable jurisdiction and pay to send these lawyers to hearings in every jurisdiction. Additionally, coordinating simultaneous discovery with two different actions in two different jurisdictions further adds to the cost of litigation. Here, by filing in this District, Plaintiff prevented Defendants from having to juggle multiple actions in multiple jurisdictions. Indeed, Counsel for Block and the Individual Defendants in this Action, Gibson, Dunn & Crutcher LLP, is the same as counsel for Block and the defendants in the Securities Class Action. *See, e.g.,* Mot. to Dismiss, *Gonsalves v. Block, Inc. et al.*, No. 5:25-cv-00642-NW, Dkt. 108 at 1 (listing Gibson Dunn & Crutcher LLP as counsel).

      Moreover, simultaneous litigation in two (or more) fora invites the very real risk of inconsistent results. *See, e.g.*, Hazard & Moskovitz, *An Historical and Critical Analysis of Interpleader*, 52 CALIF. L. REV. 706, 752 (1964) (obtaining inconsistent results from the legal

---

[14]    Block acknowledges this point and agrees. *See* Forum Mot. 11 (Severing the federal and state claims to different courts would "ultimately result in wasteful, duplicative, multi-jurisdictional litigation that is not in the best interest of any litigant, and especially companies whose interests shareholder derivative plaintiffs are duty-bound to protect.").

system "is not only a grave matter, it is a subversion of the very basis of the legal order"); Richard D. Freer, *Avoiding Duplicative Litigation: Rethinking Plaintiff Autonomy and the Court's Role in Defining the Litigative Unit*, 50 U. PITT. L. REV. 809, 814 (1988) ("The avoidance of inconsistent judgments fosters public faith in the administration of justice."); *see also In re Allion Healthcare Inc. S'holders Litig.*, 2011 WL 1135016, at *4 (Del. Ch. Mar. 29, 2011) ("Judicial resources are wasted as judges in two or more jurisdictions review the same documents and at times are asked to decide the exact same motions. Worse still, if a case does not settle or consolidate in one forum, there is the possibility that two judges would apply the law differently or otherwise reach different outcomes, which would then leave the law in a confused state and pose full faith and credit problems for all involved"). By filing in this District, Plaintiff prevented the possibility of inconsistent rulings on overlapping issues between this Action and the Securities Class Action, like materiality, falsity, scienter, etc.

In sum, each of the factors for determining the appropriateness of the Northern District of California heavily weighs in favor of litigating this Action in this District. Accordingly, the Northern District of California is the appropriate forum for this Action.

## IV.    Block Seeks to Dismiss the Action in Its Entirety and Argues Against Severing the Federal Claims

Block requests this Court use its inherent powers to dismiss the Complaint entirely—*i.e.,* both the federal Exchange Act claims and the state law breach of fiduciary duty claims on *forum non conveniens* grounds. Indeed, the Company makes clear that it is not attempting to bifurcate the claims, but rather believes the Court should dismiss the federal claims simply because the state-law claims may also be litigated in Delaware, noting explicitly that if both claims are not dismissed in their entirety, bifurcation would "ultimately result in wasteful, duplicative, multi-jurisdictional litigation that is not in the best interest of any litigant, and especially companies whose interests shareholder derivative plaintiffs are duty-bound to protect." Forum Mot. 11.

Plaintiff agrees.

However, the Company has the analysis backwards. Assuming *arguendo* that the Forum Provision did apply to this Action (and it does not), and the District of Delaware was a superior

venue to hear this dispute (it is not), the Action would only be subject to transfer, not dismissal in its entirety. Yet, Block does not seek to transfer the Action to the District of Delaware under 28 U.S.C. § 1404—which would cause the same multi-jurisdictional problems Block weaponizes against severing the claims—and has, thus, waived the argument. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir.2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

## V.     Block's Request for Judicial Notice

In a separate motion filed as an exhibit attached to Block's Forum Motion, Dkt. 54-18, Block requests this Court to take judicial notice and consider the contents of 16 exhibits. Plaintiff does not object to the Court taking judicial notice of Block's Exhibits, so long as it does not assume *truth of the assertions* within such documents if they serve only to dispute facts stated in the well pleaded Complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

## <u>CONCLUSION</u>

For the foregoing reasons, Block's Motion to Dismiss on the Grounds of *Forum Non Conveniens* must be denied.

Dated: September 11, 2025

Respectfully submitted,

**BLOCK & LEVITON LLP**

*/s/ Jason M. Leviton*

Jason M. Leviton (*pro hac vice*)
Nathan Abelman (*pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600
jason@blockleviton.com
nathan@blockleviton.com

Jacob A. Walker (SBN 271217)
**BLOCK & LEVITON LLP**
400 Concar Drive
San Mateo CA 94402
(650) 781-0025
jake@blockleviton.com

Lindsay K. Faccenda (*pro hac vice*)
**BLOCK & LEVITON LLP**
222 Delaware Avenue
Suite 1120
Wilmington, DE 19801
(302) 499-3600
lindsay@blockleviton.com

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
Daniel B. Rehns (*pro hac vice*)
Scott R. Jacobsen (*pro hac vice*)
John W. Baylet (*pro hac vice*)
112 Madison Avenue, 10th Floor
New York, New York 10016
(212) 213-8311
drehns@hrsclaw.com
sjacobsen@hrsclaw.com
JBaylet@hrsclaw.com

*Co-Lead Counsel for Plaintiff*