GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
One Embarcadero Center
Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200

JESSICA VALENZUELA, SBN 220934
  jvalenzuela@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

COLIN B. DAVIS, SBN 273942
  cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Attorneys for Defendants Dorsey, Ahuja, Botha, Brooks, Carter, Deighton, Garutti, McKelvey, Meeker, Patterson, Rothstein, Summers, Viniar, and Walker, and Nominal Defendant, Block, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE BLOCK INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | CASE NO. 5:25-cv-01262-NW<br><br>**REPLY IN SUPPORT OF BLOCK INC.'S AND THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT PURSUANT TO FED. R. CIV. P. 23.1 AND 12(B)(6)**<br><br>**Hearing:**<br>Date: November 12, 2025, at 9:00 A.M.<br>Location: Courtroom 3, 5th Floor<br>Judge: Hon. Noël Wise<br><br>Date Action Filed: February 5, 2025 |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   ARGUMENT ........................................................................................................ 2

    A.    Plaintiffs Fail to Plead That a Majority of the Demand Board Faces a
        Substantial Likelihood of Liability Under *Caremark* ...................................... 2

        1.    Plaintiffs Misconstrue the *Caremark* Standard ................................. 2

        2.    Plaintiffs Fail to Show the Demand Board Consciously Ignored Red
              Flags ................................................................................................. 3

    B.    Plaintiffs Fail to Show a Substantial Likelihood of Success on their *Brophy*
        Claim ............................................................................................................ 8

    C.    Plaintiffs Fail to Plead that Any Demand Board Member Lacks Independence ........ 10

    D.    Plaintiffs Fail to State Claims Under Rule 12(b)(6) ...................................... 12

        1.    Section 10(b) ..................................................................................... 12

        2.    Section 14(a) ..................................................................................... 14

        3.    Section 29(b) ..................................................................................... 15

III.  CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Asyst Techs., Inc. Derivative Litig.,*
  2008 WL 4891220 (N.D. Cal. Nov. 12, 2008)............................................................15

*Azar v. Yelp, Inc.,*
  2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)..............................................................9

*Behrmann v. Brandt,*
  2020 WL 4432536 (D. Del. July 31, 2020), *report and recommendation adopted,*
  2020 WL 5752389 (D. Del. Sept. 25, 2020)................................................................12

*In re Boeing Co. Derivative Litig.,*
  2021 WL 4059934 (Del. Ch. Sept. 7, 2021) ................................................................2

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014)....................................................................................................12

*In re Camping World Hold., Inc. S'holder Derivative Litig.,*
  2022 WL 288152 (Del. Ch. Jan. 31, 2022)..................................................................8

*In re Caremark Int'l Inc. Derivative Litig.,*
  698 A.2d 959 (Del. Ch. 1996)......................................................................................2

*City of Birmingham Ret. & Relief Sys.,*
  177 A.3d 47 (Del. 2017) ..............................................................................................2

*Clem v. Skinner,*
  2024 WL 668523 (Del. Ch. Feb. 19, 2024) ................................................................8

*Grabski ex rel. Coinbase Global Inc. v. Andreessen,*
  2024 WL 390890 (Del. Ch. Feb. 1, 2024) ..................................................................9

*Constr. Indus. Laborers Pension Fund v. Bingle,*
  2022 WL 4102492 (Del. Ch. Sept. 6, 2022), *aff'd,* 297 A.3d 1083 (Del. 2023) ............................3

*In re Countrywide Financial Corporation Derivative Litigation,*
  554 F. Supp. 2d 1044 (C.D. Cal. 2008)......................................................................14

*In re Craftmatic Sec. Litig. v. Kraftsow,*
  890 F.2d 628 (3d Cir. 1989)........................................................................................13

*Delaware County Employees Retirement Fund v. Sanchez,*
  124 A.3d 1017 (Del. 2015) ........................................................................................11

*Drulias v. Guthrie,*
  2019 WL 13240415 (C.D. Cal. Oct. 23, 2019)..........................................................15

*Elfers v. Gonzalez,*
  2020 WL 7264272 (D. Del. Dec. 10, 2020)...............................................................12

Gibson, Dunn &
Crutcher LLP

*Pettry ex rel. FedEx Corp. v. Smith*,
  2021 WL 2644475 (Del. Ch. June 28, 2021) ...................................................................8

*Firemen's Ret. Sys. of St. Louis v. Sorenson*,
  2021 WL 4593777 (Del. Ch. Oct. 5, 2021)......................................................................5

*Franklin v. Doheny*,
  2022 WL 2064972 (D. Del. June 8, 2022), *adopted*, 2022 WL 3099235 (D. Del.
  June 23, 2022) .................................................................................................................12

*Rich ex rel. Fuqi Int'l, Inc. v. Chong*,
  66 A.3d 963 (Del. Ch. 2013)...........................................................................................2

*Gaines v. Haughton*,
  645 F.2d 761 (9th Cir. 1981)..........................................................................................15

*In re GoPro, Inc.*,
  2020 WL 2036602 (Del. Ch. Apr. 28, 2020) ..................................................................4

*Guttman v. Huang*,
  823 A.2d 492 (Del. Ch. 2003).........................................................................................10

*Halpert Enters., Inc. v. Harrison*,
  2005 WL 1773686 (S.D.N.Y. July 26, 2005) ................................................................14

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000)........................................................................................13

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
  2018 WL 4181954 (N.D. Cal. Aug. 31, 2018)..........................................................13, 15

*In re JPMorgan Chase Derivative Litig.*,
  2014 WL 5430487 (E.D. Cal. Oct. 24, 2014) ................................................................14

*Kiger v. Mollenkopf*,
  2021 WL 5299581 (D. Del. Nov. 15, 2021) ..................................................................14

*Lamartina v. VMware, Inc.*,
  2021 WL 4133851 (N.D. Cal. Sept. 10, 2021) ...............................................................9

*Lebanon Cty. Employees' Ret. Fund v. Collis*,
  2022 WL 17841215 (Del. Ch. Dec. 22, 2022) ................................................................7

*Lee v. Fisher*,
  70 F.4th 1129 (9th Cir. 2023)........................................................................................14

*Marchand v. Barnhill*,
  212 A.3d 805 (Del. 2019) ...............................................................................................11

*In re Martha Stewart Living Omnimedia, Inc. S'holder Litig.*,
  2017 WL 3568089 (Del. Ch. Aug. 18, 2017)................................................................11

*In re Match Grp., Inc. Derivative Litig.*,
  315 A.3d 446 (Del. 2024) ...............................................................................................11

*In re McDonald's Corp. S'holder Deriv. Litig.*,
    291 A.3d 652 (Del. Ch. 2023) ....................................................................................3, 4, 5, 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................................9

*Mulquin v. Nektar Therapeutics*,
    510 F. Supp. 3d 854 (N.D. Cal. 2020), *aff'd sub nom. In re Nektar Therapeutics*
    *Sec. Litig.*, 34 F.4th 828 (9th Cir. 2022) .............................................................................4

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) ...................................................................................13

*Ng v. Berkeley Lights, Inc.*,
    2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ........................................................................8

*Okla. Firefighters Pension & Ret. Sys. v. Corbat*,
    2017 WL 6452240 (Del. Ch. Dec. 18, 2017) ....................................................................3, 5

*Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*,
    2023 WL 3093500 (Del. Ch. Apr. 26, 2023) .........................................................................4

*Paciga v. Invuity Inc.*,
    2019 WL 3779694 (N.D. Cal. Aug. 12, 2019) ....................................................................14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014).....................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ................................................................................................8

*Richardson v. Clark*,
    2020 WL 7861335 (Del. Ch. Dec. 31, 2020) ........................................................................1

*In re Rocket Fuel Inc.*,
    2016 WL 4492582 (N.D. Cal. Aug. 26, 2016) ....................................................................10

*Sandys v. Pincus*,
    152 A.3d 124 (Del. 2016) .....................................................................................................10

*Santa Fe Industries v. Green*,
    430 U.S. 462 (1977) ..............................................................................................................13

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .......................................................................................................3

*Teamsters Local 443 Health Services & Insurance Plan v. Chou*,
    2020 WL 5028065 (Del. Ch. Aug. 24, 2020) ....................................................................7, 8

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
    119 A.3d 44 (Del. Ch. 2015) ................................................................................................12

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................................................9

iv

*In re Wells Fargo & Co. Shareholder Derivative Litigation*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................14, 15

*Wozniak v. Align Techs., Inc.*,
   2011 WL 2269418 (N.D. Cal. June 8, 2011) ...................................................................9

REPLY ISO MOT. TO DISMISS PURSUANT TO FED. R. CIV. P. 23.1 AND 12(B)(6)
CASE NO. 5:25-CV-01262-NW

Gibson, Dunn &
Crutcher LLP

# I.    PRELIMINARY STATEMENT

Plaintiffs' opposition confirms the Complaint must be dismissed under Rule 23.1 and Delaware law for failure to plead demand futility.  Plaintiffs fall far short of demonstrating—as they must—that a majority of Block's Board faces a substantial likelihood of liability on Plaintiffs' *Caremark* claim. The Complaint "does not allege that the directors did nothing" in response to purported red flags, but instead second-guesses the Board's responses by claiming that "what they did was insufficient." *Richardson v. Clark*, 2020 WL 7861335, at *11 (Del. Ch. Dec. 31, 2020).  Lacking particularized facts demonstrating that the Board consciously disregarded its duties to oversee Block's compliance program, the opposition resorts to mischaracterizing, and in some cases ignoring, the documents incorporated by reference in the Complaint.  Far from showing bad faith, Plaintiffs' allegations and the documents on which they rely confirm that the Board oversaw an evolving compliance program that acted in response to evolving challenges presented by Cash App's expansion.  As a result, Plaintiffs cannot meet their burden of demonstrating the Board members face a substantial likelihood of liability for breaching their fiduciary duties under *Caremark*, as required to excuse a pre-suit demand.

Plaintiffs fare no better with their arguments that Mr. Dorsey and Mr. McKelvey face a substantial likelihood of liability for insider trading and that other directors are beholden to them.  The Ninth Circuit has flatly rejected Plaintiffs' argument that the value of challenged trades gives rise to an inference of scienter as to insider trading, and the opposition does not attempt to demonstrate any other basis for concluding the challenged trades—all made pursuant to Rule 10b5-1 plans—were suspicious. And Plaintiffs' argument that other directors lack independence from Mr. Dorsey and/or Mr. McKelvey rests on conclusory allegations of friendship and business deals that fall well short of overcoming the presumption under Delaware law that directors are capable of independently considering a demand.

Plaintiffs' Complaint fails because they have not shown that demand was futile.  And even if they had, Plaintiffs' deficient fiduciary duty and Exchange Act claims should be dismissed for failure to state a claim under Rule 12(b)(6).

## II.    ARGUMENT

### A.    Plaintiffs Fail to Plead That a Majority of the Demand Board Faces a Substantial Likelihood of Liability Under *Caremark*

#### 1.    Plaintiffs Misconstrue the *Caremark* Standard

Plaintiffs do not dispute that to demonstrate a substantial likelihood of liability under *Caremark*, they must clear a high bar by pleading "particularized facts that the board knew of evidence of corporate misconduct" and "acted in bad faith by consciously disregarding its duty to address that misconduct." Opp. at 8 (quoting *In re Boeing Co. Deriv. Litig.*, 2021 WL 4059934, at *33 (Del. Ch. Sept. 7, 2021)). But the opposition misconstrues the standard by relying on language taken out of context from *Rich ex rel. Fuqi Int'l, Inc. v. Chong*, 66 A.3d 963 (Del. Ch. 2013). Opp. at 8. In *Chong*, shareholders filed suit against the directors of a company after it misstated its finances in public filings. 66 A.3d at 967, 973-74. *Chong* was *not* a derivative case where plaintiff was required to meet the heightened standard for pleading that demand was excused because the directors face a substantial likelihood of liability. Rather, under the "lenient pleading standard" of Delaware Court of Chancery Rule 12(b)(6), which "ease[d] th[e] Court's scrutiny of [the] *Caremark* claim," the court denied the motion to dismiss based on the egregious allegations: the company "detailed its extensive problems with internal controls" in press releases; management refused to fund the audit committee and leadership defected *en masse*; and directors "did nothing to ensure that [] reporting mechanisms were accurate" and "allowed $130 million in cash to be transferred out of the company." *Id*. at 981-82, 984-85.

Plaintiffs seek to rewrite *Caremark* doctrine based on a single line from *Chong* that "[w]hen faced with knowledge that the company controls are inadequate, the directors must *act*, i.e., they must prevent further wrongdoing from occurring." *Id*. at 984 (emphasis in original). But *Chong* reached this conclusion after reasoning that "even the barest framework of appropriate controls" "would have prevented" the unauthorized transfers, and the board had "zero controls in place." *Id*. This is not even close to what Plaintiffs allege here, which, fundamentally, alleges that controls were not effective, not that they did not exist at all. *See, e.g.,* Compl. ¶ 83. Moreover, the referenced language from *Chong* has not been applied in any other *Caremark* case in the way Plaintiffs argue it should be applied here, nor did *Chong* change the well-established principle that "challenging the effectiveness" of a board's

response to red flags "is not enough to state a *Caremark* claim." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *25 (Del. Ch. Dec. 18, 2017); *see also Stone v. Ritter*, 911 A.2d 362, 369, 373 (Del. 2006) (affirming dismissal of complaint that sought to "equate a bad outcome with bad faith"). Plaintiffs "must do more than plead that the directors responded in a weak, inadequate, or even grossly negligent manner." *In re McDonald's Corp. S'holder Deriv. Litig.*, 291 A.3d 652, 661-62 (Del. Ch. 2023). Rather, the "pled facts must support an inference that the failure to take action was sufficiently sustained, systematic, or striking to constitute action in bad faith." *Id.* at 677; *see also Constr. Indus. Laborers Pension Fund v. Bingle*, 2022 WL 4102492, *1 (Del. Ch. Sept. 6, 2022), *aff'd*, 297 A.3d 1083 (Del. 2023) ("only utter . . . failure to act in the face of 'red flags' so vibrant that lack of action implicates bad faith . . . have led to viable claims under *Caremark*").

### 2. Plaintiffs Fail to Show the Demand Board Consciously Ignored Red Flags

The motion to dismiss is replete with examples of actions taken by Block, under the Board's oversight and supervision, to respond to evolving compliance issues. *See* ECF No. 55 (Mot. to Dismiss Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6)) ("Mot.") at 10, 12-16. This includes ██████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ *Id.* These actions were not isolated either—the Board consistently oversaw Block's compliance program throughout the relevant period. At each quarterly meeting from at least 2020 through 2022, the Board ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ECF No. 55-1 (Decl. of Brian M. Lutz ISO Mot.) ("Decl. ISO Mot."), Exs. I, J, K; Decl. of Brian M. Lutz ISO Reply ISO Mot. ("Reply Decl."), Exs. JJ, KK, QQ, RR, SS, TT, UU, VV, WW. From at least 2019 through 2022, the Audit and Risk Committee ("ARC") received quarterly updates on ███████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████ Decl. ISO Mot., Exs. D, E, L, O, P, Q, S, U, V, W, Z; Reply Decl., Exs. LL,

1   MM, NN, ZZ, AAA.  And at least once a year from 2019 through 2022, the ARC discussed ███

2   ████████████████████████████████████████ *See e.g.* Decl. ISO Mot., Exs. E, M, O, P, Q,

3   R;  Reply Decl., Exs. YY, AAA.[1]

4          The opposition effectively concedes that the Board acted in direct response to purported red

5   flags—which alone defeats a *Caremark* claim.  For example, Plaintiffs acknowledge the following

6   compliance measures undertaken by the Company to address specific compliance challenges:

7
8   •   ████████████████████████████████████████████████████████████████████████
9       ████████████████████████████████████████████████████████████████████████

    Opp. at 14 (quoting Decl. ISO Mot., Ex. N at 6-7, Ex. Q at 14).

10
11  •   ████████████████████████████████████████████████████████████████████████
        ████████████████████████████████████████████████████████████████████████
12      ███████████████████████████████████████████████████████████████ Opp. at

13  14-15 (quoting Decl. ISO Mot., Ex. R at 7, Ex. H at 5, Ex. X at 14, Ex. I at 5).

14  •   ████████████████████████████████████████████████████████████████████████

    Opp. at 15 (quoting Decl. ISO Mot., Ex. Q at 14).

15
16         Given these facts showing clear Board oversight, Plaintiffs rest their *Caremark* claim on a

17  theory that the Board should have done more.  *See* Opp. at 13 (arguing Board knew Block implemented

    "a woefully deficient response" to alleged red flags); *id*. at 14 ("all steps the Company *had taken* were
18
    failing") (emphasis in original).  But as explained, *supra* § II.A.1, this proposition fails as a matter of
19
20  law.  "A *Caremark* claim cannot be squared with an allegation the board *responded* to red flags."  *In*

21
    _____

22  [1] Plaintiffs do not object to incorporation by reference of Board and ARC minutes and materials.  Opp.
    at 13.  Instead, they implore the Court to ignore them by arguing that they cannot be used to weigh
23  evidence or alter the pleading standard.  *Id.*  But consideration of documents incorporated by reference
    is always proper "to prevent plaintiffs from cherry-picking certain portions of documents that support
24  their claims, while omitting portions that weaken their claims."  *Mulquin v. Nektar Therapeutics*, 510
    F. Supp. 3d 854, 863 (N.D. Cal. 2020), *aff'd sub nom. In re Nektar Therapeutics Sec. Litig.*, 34 F.4th
25  828 (9th Cir. 2022); *see also* ECF No. 55-38 (Req. for Jud. Notice) at 4.  The redactions in the
    documents render them no less useful for this purpose.  Unlike the cases cited in the opposition,
26  Plaintiffs do not contend the redactions are improper.  *See In re McDonald's Corp.*, 291 A.3d at 696
    (defendants engaged in "questionable redaction practices" where they redacted minutes exclusively
27  focused on topics related to the alleged wrongdoing); *Ontario Provincial Council of Carpenters'
    Pension Tr. Fund v. Walton*, 2023 WL 3093500, at *3 (Del. Ch. Apr. 26, 2023) (lack of unredacted
28  material reflecting "context, the substance of the discussion, and any decision" on relevant issues
    entitled plaintiffs to favorable inference).

*re GoPro, Inc.*, 2020 WL 2036602, at *13 (Del. Ch. Apr. 28, 2020) (emphasis in original). "What [directors] have to do is make a good faith effort," which Plaintiffs cannot refute with allegations that the Board did not "fix[] the problem." *In re McDonald's Corp.*, 291 A.3d at 684. The Complaint and documents also make clear that the Board made a good faith effort. Mot. at 10-16.[2]

Plaintiffs' attempt to shoehorn their argument about the adequacy of the Board's response into a claim that the Board consciously disregarded its duty of loyalty fails many times over. *First*, the opposition attempts to distract the Court from reviewing the incorporated documents, instead citing misleading allegations *from the Complaint*—not the text of the documents themselves—to argue the Board "did not act to address" Block's "fail[ure] to keep pace" with compliance obligations. Opp. at 12. The reason for Plaintiffs' misleading tactic is clear: the documents show that the Board oversaw the Company's response to compliance issues, which defeats Plaintiffs' *Caremark* claim. Indeed, each of Plaintiffs' allegations that the Board "did not act" is belied by the incorporated documents:

(i)       ████████████████████████████████████████ Decl. ISO Mot., Ex. B at 3;

(ii)      ████████████████████████████████ Reply Decl., Ex. PP at 7; Ex. XX at 5;

(iii)     ████████████████████████████████████████████ Decl. ISO Mot., Ex. O at 11; Reply Decl., Ex. SS at 8;

(iv)      ████████████████████████ Decl. ISO Mot., Ex. H at 5–6;

(v)       ████████████████████ Decl. ISO Mot., Ex. V at 16; Reply Decl., Ex. BBB at 10; and

(vi)      ████████████████████████████ Decl. ISO Mot., Ex. X at 14.[3]

---

[2] Plaintiffs dismiss statements about Block's compliance plans as "aspirational." Opp. at 14. But courts routinely find oversight of such plans sufficient to demonstrate a board's good faith. *See Firemen's Ret. Sys. of St. Louis v. Sorenson*, 2021 WL 4593777, at *16 (Del. Ch. Oct. 5, 2021) ("[N]o 'red flags' were deliberately disregarded. Rather, management told the Board that it was addressing or would address the issues presented."); *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *17 (Del. Ch. Dec. 18, 2017) (no bad faith where "board learned that 'management was preparing an action plan'").

[3] Plaintiffs cite allegations about bad actors perpetrating fraud on Cash App, high volumes of SARs, staffing challenges, and operational issues like the need to implement an ACH (automated

*Second*, the opposition ignores most of Block's responses to compliance issues, instead focusing on two aspects of its compliance program—machine learning and ██████████—and conclusorily opining they were "inadequate." Opp. at 10, 14-15. Again, an allegedly *inadequate* response does not make a *Caremark* claim, which requires the Board consciously to do nothing when red flags are waved in its face. *In re McDonald's Corp.*, 291 A.3d at 661-62. Even as to Plaintiffs' baseless argument that the Board "took no action" after machine learning tools ████████████ ████████████████████ Opp. at 10, the incorporated documents show the opposite: ██████ ███████████████████████████████████████████████████████████████████ ██████████████████████████ Decl. ISO Mot., Ex. G at 3. Plaintiffs also complain that Block ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ █████████████████████████████████ Decl. ISO Mot., Ex. X at 7. Plaintiffs argue that compliance measures implemented to address criminal activity on Cash App involved ██████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Opp. at 14-15 (citing Decl. ISO Mot., Ex. R at 7; Ex. H at 5; Ex. X at 14; Ex. I at 5).

Plaintiffs also contend that the Board ██████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████ *See, e.g.*, Decl. ISO Mot., Ex. W at 14 (██████ ████████████████████████████████████████); Decl. ISO Mot., Ex. K at 7 (██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████). Further, Plaintiffs argue that Block's ████████ ████

clearinghouse) fraud program, arguing they support Plaintiffs' claim that the Company "was failing to carry out its compliance obligations." Opp. at 9-10. The opposition does not even attempt to engage with the Board's responses to these issues. *See* Mot. at 12-16 (describing Board's response to SARs and backlogs, criminal activity, staffing, and other compliance issues).

"fail[ed] to address" compliance failures, Opp. at 15, but again Plaintiffs ignore the litany of actions taken to address staffing—*see, e.g.*, Decl. ISO Mot., Ex. R at 10 (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). And Plaintiffs refuse to acknowledge, from the face of the documents on which they rely, that these actions led to improvements, *see, e.g.*, Decl. ISO Mot., Ex. H at 6 (█████████████████████████████████████████████████); Decl. ISO Mot., Ex. U at 12 (██████████████████); Decl. ISO Mot., Ex. V at 15 (██████████████████).

    *Third*, the opposition introduces a theory that appears nowhere in the Complaint: that the Board "consciously directed the Company to sacrifice its compliance obligations to boost user growth and reduce costs." Opp. at 8. But the opposition does not, and cannot, point to any particularized facts that support this argument. *Id.* at 8-9. Plaintiffs' attempt to rely on this unpled theory should be rejected outright. Moreover, yet again, this theory relies on a clear mischaracterization of the Board materials cited in the Complaint. For example, Plaintiffs claim that the Board "acquiesce[ed]" to the Company █████████████████████████████████████████████ Opp. at 8-9. But the ARC was informed that Block ████████████████████████████████████████ Decl. ISO Mot., Ex. Q at 14. Likewise, the Board never ████████████████████████████ Opp. at 9. The documents show ████ ██████████████████████████ Decl. ISO Mot., Ex. Q at 11. And Plaintiffs' assertion that Block's ███████████████████████████████████████████████████. Decl. ISO Mot., Ex. N at 5.

The opposition's few cited decisions only confirm that Plaintiffs' *Caremark* claim fails. In *Lebanon Cty. Employees' Ret. Fund v. Collis*, 2022 WL 17841215 (Del. Ch. Dec. 22, 2022), there were merely three instances of board involvement in responding to red flags during a six-year period, which was insufficient "when evaluated against the panoply of allegations," including that the board received reports about problems yet "did nothing in response." *Id*. at *16. In *Teamsters Local 443 Health Services & Insurance Plan v. Chou*, 2020 WL 5028065 (Del. Ch. Aug. 24, 2020), the board never discussed or received a report on the "mission critical risk" of pre-filled syringes. *Id*. at *20. These cases are nothing like the record here, which reflects extensive reporting to the Board and ARC and Board oversight over Cash App's evolving compliance efforts. Mot. at 10-11.[4] Indeed, the ARC was presented with comprehensive readouts and engaged in substantive discussions during meetings occurring multiple times per year during the relevant period. *See supra* § II.A.2 (citing ARC materials).

**B.      Plaintiffs Fail to Show a Substantial Likelihood of Success on their *Brophy* Claim**

Plaintiffs' argument that Mr. Dorsey and Mr. McKelvey face a substantial likelihood of liability for insider trading also fails. Plaintiffs do not dispute that the challenged trades represent a small fraction of Mr. Dorsey's and Mr. McKelvey's holdings, and that both retained significant stakes in Block—49 million and 13 million shares, respectively—easily rebutting any inference of scienter. Mot. at 17-18; Opp. at 17, n.8. Nor do Plaintiffs contest that the sales in 2020 and 2021 were pursuant to Rule 10b5-1 plans that were consistent with prior plans in place since 2016. Mot. at 18; Opp. at 17; Decl. ISO Mot., Exs. AA, BB. The Complaint lacks *any* allegations about Mr. Dorsey's and Mr. McKelvey's prior trades, much less the "[p]articularized facts" necessary to support a rational inference of scienter. *In re Camping World Hold., Inc. S'holder Deriv. Litig.*, 2022 WL 288152, at *9 (Del. Ch.

---

[4] Plaintiffs attempt to distinguish only two of the many cases Defendants cite in the Motion to support their arguments regarding Plaintiffs' *Caremark* claim. Both arguments are unavailing. Plaintiffs' attempt to distinguish *Pettry ex rel. FedEx Corp. v. Smith*, 2021 WL 2644475 (Del. Ch. June 28, 2021) by suggesting the *Pettry* board responded to purported red flags in more or better ways than Block's Board only highlights Plaintiffs' misguided focus on the adequacy of a board response, which cannot support a *Caremark* claim. Opp. at 12. In any event, Plaintiffs do not explain how the Board's actions differ meaningfully from what the board did in *Pettry*. *Id*. Likewise, just because the board in *Clem v. Skinner*, 2024 WL 668523 (Del. Ch. Feb. 19, 2024) was able to fix the specific wrongdoing about which the plaintiffs complained, does not mean a board *must* resolve all issues definitively to avoid *Caremark* liability—all that is required is a good faith effort. *Id*. Plaintiffs entirely ignore Defendants' authorities establishing that allegations of an "ineffective response" fall far short of pleading a Caremark claim. *Oklahoma Firefighters*, 2017 WL 6452240, at *25; *see* Mot. at 11-14.

Jan. 31, 2022); *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1064 (9th Cir. 2014) (complaint contained "no allegations regarding . . . trading history," which were "necessary to determine whether the sales during the Class Period were 'out of line with' historical practices"); *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *15 (N.D. Cal. Feb. 20, 2024) (same).

Plaintiffs contend that the challenged trades deviated from prior trades because Block's share price was higher in 2020, making the value of each challenged trade greater. Opp. at 17. But "[u]nder Ninth Circuit law, the absolute value of the stock sale does not on its own give rise to an inference of scienter. . . .   [I]nside trading becomes suspicious only when considered in comparison to the defendant's overall portfolio and trading practices." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *22 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014) (citing *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1098 (9th Cir. 2002)).   The Complaint contains no allegations of a deviation from prior trading.   Further, the challenged trades comprised approximately 5% and 16% of Mr. Dorsey's and Mr. McKelvey's total holdings, respectively.   Mot. at 18.   Courts routinely find greater percentages of shares sold insufficient to show scienter.   *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (sale of 37% of holdings insufficient to establish scienter); *Wozniak v. Align Techs., Inc.*, 2011 WL 2269418, at *14-15 (N.D. Cal. June 8, 2011) (sale of 29% of holdings insufficient to show scienter).   While the value of the shares sold was higher in 2020 due to a higher share price, so too was the value of Mr. Dorsey's and Mr. McKelvey's holdings—most of which they retained, aligning their interests with shareholders.

Plaintiffs' *Brophy* allegations bear little resemblance to the cases they cite in which courts have drawn inferences of scienter.   In *Grabski ex rel. Coinbase Global Inc. v. Andreessen*, 2024 WL 390890 (Del. Ch. Feb. 1, 2024), the defendants sold $2.9 billion worth of stock in the 10-day period following the stock's direct listing.   2024 WL 390890 at *3-4.   In finding the plaintiff adequately alleged scienter, the court also considered that the board took the unusual step of not imposing a lock-up period to prohibit insiders from selling shares immediately after the listing.   *Id*. at *10.   Similarly, in *Azar v. Yelp, Inc.*, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018), the court drew an inference of scienter despite a Rule 10b5-1 plan where defendants' three sales of 250,000 shares each during a one-month span was dramatically inconsistent with their typical allotments of 13,000 shares.   *Id*. at *18.   And in *Lamartina*

1   *v. VMware, Inc.*, 2021 WL 4133851, at *11-12 (N.D. Cal. Sept. 10, 2021), each defendant sold shares

2   on fewer than two occasions prior to the class period, then traded twelve and seventeen times each

3   within the one-year class period.[5]  Plaintiffs allege no similar facts here.

4   **C.    Plaintiffs Fail to Plead that Any Demand Board Member Lacks Independence**

5       If the Court finds, as it should, that neither Mr. Dorsey nor Mr. McKelvey face a substantial

6   likelihood of liability under *Brophy*, it need not address Plaintiffs' allegations that a majority of the

7   Demand Board lacks independence.  If the Court does consider these allegations, it should find

8   Plaintiffs fall far short of pleading particularized facts demonstrating a lack of independence.

9       Delaware General Corporation Law Section 144(d)(2) provides that directors of public

10  companies are presumed to be disinterested if the board determines the directors are independent under

11  applicable stock exchange rules, a presumption that can only be rebutted with substantial facts that a

12  director has a conflict of interest.  This presumption applies to Ms. Meeker and Mr. Botha.  The

13  Complaint does not overcome the presumption of independence as to these (or any other) directors.

14      ***Ms. Meeker.***  Plaintiffs' contention that Ms. Meeker is not independent from Mr. Dorsey or Mr.

15  McKelvey boils down to one allegation: that Kleiner Perkins, where Ms. Meeker is a partner, invested

16  in Block in 2011, which led to her joining the Board.  Opp. at 19.  Plaintiffs argue this is sufficient to

17  show lack of disinterestedness, relying on *Sandys v. Pincus*, 152 A.3d 124, 132-33 (Del. 2016).  But

18  while *Pincus* also involved Kleiner Perkins partners whose firm had invested in the company at issue,

19  the *Pincus* plaintiffs alleged additional facts to establish lack of independence: Kleiner Perkins

20  controlled 9.2% of the company's shares, was invested in one interested shareholder's wife's company,

21  and had invested in and served on the board of another company with the second interested shareholder.

22  *Id*. at 133-34.  Plaintiffs' allegation that Ms. Meeker's firm invested in Block once 14 years ago (and

23

24  ───────────────
   [5] Plaintiffs further contend that Mr. Dorsey and Mr. McKelvey learned about "severe compliance

25  deficiencies described in internal Company records," "[n]one" of which was publicly disclosed.  Opp.
   at 16.  Plaintiffs make no attempt to identify the particular information alleged to be material non-

26  public information on which Mr. Dorsey and Mr. McKelvey traded.  Plaintiffs thus fall far short of
   meeting the high bar for stating an insider trading claim.  *See In re Rocket Fuel Inc.*, 2016 WL 4492582,

27  at *6 (N.D. Cal. Aug. 26, 2016) ("[I]t is unwise to formulate a common law rule that makes a director
   'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in

28  the market at a time when he possessed material, non-public information.") (quoting *Guttman v. Huang*,
   823 A.2d 492, 502 (Del. Ch. 2003)).

without any allegation as to its current holdings) does not show the same "ongoing business relationship" between "repeat players" that existed in *Pincus*. *See In re Martha Stewart Living Omnimedia, Inc. S'holder Litig.*, 2017 WL 3568089, at \*20 (Del. Ch. Aug. 18, 2017) ("a bare allegation of a prior business relationship from over a decade ago . . . does not come close to overcoming the presumption of independence").

**Mr. Botha.** Plaintiffs' allegation that Mr. Botha's firm, Sequoia Capital, also was an early investor in Block fails to demonstrate lack of independence for these same reasons. Nor are allegations that Sequoia Capital invested in Elon Musk's bid to acquire Mr. Dorsey' former company, and that Mr. Botha and Mr. Dorsey each have connections to Mr. Musk (who is not alleged to have any relationship to Block), sufficient to establish that Mr. Botha and Mr. Dorsey "repeatedly invested in each other." Opp. at 20. The opposition has no response to the arguments raised in the motion: that the allegations show nothing more than indirect and tenuous ties between individuals with a mutual business contact.

**Mr. Eisen.** Plaintiffs' single, conclusory assertion that Mr. Eisen "owes an important debt of gratitude" to Mr. Dorsey and Mr. McKelvey because his wealth is due to Block's acquisition of Afterpay likewise fails. The opposition makes no attempt to distinguish the cases cited in Plaintiffs' motion holding that similar business deals do not create lack of independence. *See* Mot. at 21. And the cases cited by Plaintiffs are easily distinguishable, as they involve allegations of longstanding and close ties unlike the allegations here. *See, e.g., In re Match Grp., Inc. Deriv. Litig.*, 315 A.3d 446, 471-72 (Del. 2024) (no independence where director earned significant compensation as longstanding employee of company and director of affiliated companies, and he and interested director had exchanged public praise, including that director was "more than grateful" for opportunities provided by interested director); *Marchand v. Barnhill*, 212 A.3d 805, 820 (Del. 2019) (no independence where director owed interested director for giving him his first job, nurturing progress to top manager, and spearheading campaign to name a building after him).

**Mr. Dorsey and Mr. McKelvey.** Plaintiffs' bare allegations that Mr. Dorsey and Mr. McKelvey have been "friends and colleagues" since Mr. Dorsey interned for Mr. McKelvey 30 years ago and that they co-founded Block together are insufficient to overcome their presumed independence in assessing a demand. These deficient arguments do not transform into compelling ones simply by considering

them in "full context." Opp. at 19. Unlike *Delaware County Employees Retirement Fund v. Sanchez*, 124 A.3d 1017, 1021 (Del. 2015), Plaintiffs here do not allege particularized facts about a "close" friendship, or that Mr. Dorsey and Mr. McKelvey or their family members are dependent on each other for their income. Their status as interested directors under NYSE rules is not determinative either. *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 61 (Del. Ch. 2015) (director was independent despite designation as not independent under NYSE rules).

### D.     Plaintiffs Fail to State Claims Under Rule 12(b)(6)

Plaintiffs' *Caremark* and *Brophy* claims fail for the reasons explained, *supra* §§ II.A, II.B. Plaintiffs' Exchange Act claims also should be dismissed for failure to state a claim.

#### 1.     Section 10(b)

***Plaintiffs Lack Standing to Bring the Section 10(b) Claim.*** Plaintiffs' derivative Section 10(b) claim rests on the nonsensical theory that Block was deceived by its own directors when repurchasing the Company's shares. But this theory fails as a matter of law. A "corporation [is] 'simply a form of organization' . . . . It cannot literally be deceived." *Elfers v. Gonzalez*, 2020 WL 7264272, at *3 (D. Del. Dec. 10, 2020) (citations omitted) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014)). "[S]ince the buybacks were approved by [Block]'s directors . . . , the directors must have been deceived." *Id.*; *see also Franklin v. Doheny*, 2022 WL 2064972, at *2 (D. Del. June 8, 2022), *adopted*, 2022 WL 3099235 (D. Del. June 23, 2022) (theory that directors disseminated misleading information and then were deceived by the same information when approving buy backs was not actionable under Section 10(b)). Here, Plaintiffs allege the Individual Defendants made the allegedly fraudulent statements ***and*** that they authorized stock repurchases. Plaintiffs do not explain how the directors could have deceived themselves. Far from it, the opposition asserts that "Defendants misled ***shareholders***," Opp. at 21 (emphasis added), highlighting that this claim properly must be brought in a direct shareholder action. Plaintiffs' reliance on contrary authority predating Block's recent and more convincing authority in *Elfers* and *Franklin*, *see* Opp. at 22, does not save their deficient claim.

***The Challenged Statements Do Not Give Rise to a Cognizable Section 10(b) Claim.*** Plaintiffs primarily challenge Block's and certain Individual Defendants' statements about the Company's compliance program, which Plaintiffs claim the Board failed properly to oversee. *See, e.g.,*Compl. ¶¶

12

73, 76, 79, 81.  But "[t]he law is well-established that bootstrapping a federal securities claim to a cause of action for breach of fiduciary duty is not permissible."  *Behrmann v. Brandt*, 2020 WL 4432536, at *18 (D. Del. July 31, 2020), *report and recommendation adopted*, 2020 WL 5752389 (D. Del. Sept. 25, 2020); *see also Santa Fe Industries v. Green,* 430 U.S. 462, 474–80 (1977) (securities laws do not create federal remedy for corporate misconduct).  Because the "central thrust" of Plaintiffs' allegations is "that [Block's] board failed to correctly assess the adequacy of its internal controls—not that it sought to deceive investors about the quality of those controls"—the claim amounts to "nothing more than a non-actionable generalized claim[] of mismanagement[.]"  *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 977-78 (N.D. Cal. 2015) (internal citations and quotations omitted).

  ***Plaintiffs Fail to Plead Falsity.***  The opposition fails to explain how allegedly omitted facts relating to the effectiveness of Block's compliance program turn general statements describing the nature of this program actionable under the federal securities laws.  *See* Compl. ¶¶ 71-82.  For example, Plaintiffs challenge Block's statement from the 2019 10-K that it had "implemented an AML program designed to prevent our payments network from being used to facilitate money laundering, terrorist financing, and other illicit activity."  *Id*. ¶ 73.  But Plaintiffs fail to allege that Block *did not* design such a program or combat criminal activity on Cash App.  Indeed, the record shows the opposite.  *See* Mot. at 10-15; *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 WL 4181954, at *4 (N.D. Cal. Aug. 31, 2018) ("Omissions are actionable only where they 'make the actual statements misleading'.").

  As for statements challenging Block's "transacting actives" metric, Plaintiffs do not engage with the fact that Block never purported to disclose either unique individual users on its platform or unique active users.  Plaintiffs similarly offer no well-pleaded facts that Block changed the way it calculated accounts as opposed to simply changing the name of the metric.

  ***Plaintiffs Fail to Plead Scienter***.  The opposition asserts that Defendants contemporaneously received reports regarding Block's compliance program and made the challenged statements.  But pleading scienter requires more: Plaintiffs must allege that Defendants "had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts[.]"  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000).  Plaintiffs fail to meet this standard.  Further, the documents Plaintiffs cite demonstrate that under the Board's

oversight, Block took action in response to evolving compliance issues as Cash App's business expanded. Compl. ¶¶ 99, 104, 124. *See supra* § II.A.2; Mot at. 10-15. Plaintiffs' mischaracterization of the documents does not constitute "specific negative information . . . that contradict Defendants' public statements." *Paciga v. Invuity Inc.*, 2019 WL 3779694, at *6 (N.D. Cal. Aug. 12, 2019).

### 2.    Section 14(a)

The opposition does not contest that Plaintiffs lack standing to bring a Section 14(a) claim derivatively as a matter of law. *See* Mot. at 22 (citing *Lee v. Fisher*, 70 F.4th 1129, 1146, 1149 (9th Cir. 2023) (en banc)). In their opposition to the motion to dismiss on *forum non conveniens* grounds, Plaintiffs effectively concede that the claim should only be brought directly. *See* ECF No. 65 at 13.

Even if Plaintiffs could bring their Section 14(a) claim derivatively, the claim fails on its own terms. *First*, the opposition confirms the claim is premised entirely on the Board's oversight of Block's compliance functions. Opp. at 23. The claim thus "amounts to nothing more than an attempt to dress up an ordinary state breach of fiduciary duty claim in federal securities law clothing, a maneuver that the caselaw plainly prohibits." *Halpert Enters., Inc. v. Harrison*, 2005 WL 1773686, at *3 (S.D.N.Y. July 26, 2005); s*ee also Kiger v. Mollenkopf*, 2021 WL 5299581, at *5–6 (D. Del. Nov. 15, 2021) (dismissing Section 14(a) claim that "rehashes the same allegations" as "fiduciary duty claims").

*Second*, Section 14(a) claims must be premised on alleged misstatements in proxies that impact shareholder votes. Plaintiffs allege that the proxy, which concerns the election of the directors, omitted details about alleged mismanagement and the related risks. Opp. at 23; ¶ 249. But the alleged harm stems from the directors' conduct *after* their election, *not* from the shareholder vote itself. This indirect theory of harm is not cognizable. *See* Mot. at 24-25. Plaintiffs' authority in *In re Wells Fargo & Co. Shareholder Derivative Litigation*, 282 F. Supp. 3d 1074, 1102-03 (N.D. Cal. 2017) and *In re Countrywide Financial Corporation Derivative Litigation*, 554 F. Supp. 2d 1044, 1066-77 (C.D. Cal. 2008) does not alter this conclusion, as both cases fall within the narrow "exception where such claims can proceed" when the "'corresponding fiduciary duty claim was of secondary importance.'" *Kiger*, 2021 WL 5299581, at *5–6 (quoting *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1077 (C.D. Cal. 2008)). Because Plaintiffs' allegations of mismanagement lie at the heart of the

Complaint, they cannot "stand on their own feet as § 14(a) violations." *In re JPMorgan Chase Deriv. Litig.*, 2014 WL 5430487, at *20 (E.D. Cal. Oct. 24, 2014).

*Third*, allegedly omitted facts relating to the Board's oversight of Block's compliance program do not render statements concerning the Board structure and purpose of that oversight false or misleading. *See* Compl. ¶¶ 248-252; *see also Irving Firemen's Relief & Ret. Fund*, 2018 WL 4181954, at *8 (data security representations not actionable because "[d]efendants never claimed that [defendants] would never again suffer a data breach, nor does [p]laintiff suggest as much").

### 3.    Section 29(b)

Plaintiffs fail to allege an Exchange Act violation and thus necessarily fail to allege that any contract "either violated securities law when it was made or required a violation of securities law in its performance." *Drulias v. Guthrie*, 2019 WL 13240415, at *7 (C.D. Cal. Oct. 23, 2019). Even if Plaintiffs had pled the requisite underlying Exchange Act violation, they fail to identify a contract to be rescinded, flunking even the most basic notice requirements under Rule 8(a).[6] The opposition contends this claim is about contracts for compensation of the directors and officers, but Plaintiffs fail to explain how such contracts were signed expressly in violation of federal securities law or how the performance of those contracts necessarily required violations of securities law. *Id*. ("The nexus between the securities violation in question and the contract must be closer than a simple allegation that a securities violation was committed in the course of an employment contract.").

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss this action with prejudice.

---

[6] Plaintiffs cite *Wells Fargo* to claim they need not identify specifically the contracts to be rescinded. Opp. at 25 (citing 282 F. Supp. 3d at 1106). But *Wells Fargo* grounded its decision in *In re Asyst Techs., Inc. Derivative Litig.*, 2008 WL 4891220, at *9 (N.D. Cal. Nov. 12, 2008), where plaintiffs identified stock option grants by the date and amount of the grant, and the court rejected defendants' argument that plaintiffs had not sufficiently identified the contracts at issue. *See id.; In re Asyst Techs., Inc. Derivative Litig.,* No. 06-cv-04669 (N.D. Cal. 2006), Dkt. 74 ¶¶ 73-80 (Amended Complaint). Here, Plaintiffs provide no details on any of the alleged employment contracts they seek to rescind. As such, neither case applies. *See also Drulias*, 2019 WL 13240415, at *7 (declining to extend *Wells Fargo* and *Asyst*).

Dated: October 14, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Brian M. Lutz*

Brian M. Lutz, SBN 255976
blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200

Jessica Valenzuela, SBN 220934
jvalenzuela@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300

Colin B. Davis, SBN 273942
cdavis@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone: 949.451.3800

*Attorneys for Defendants Dorsey, Ahuja, Botha,
Brooks, Carter, Deighton, Garutti, McKelvey,
Meeker, Patterson, Rothstein, Summers, Viniar,
and Walker, and Nominal Defendant, Block, Inc.*