United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE BLOCK INC. SHAREHOLDER DERIVATIVE LITIGATION

Case No. 25-cv-01262-NW (VKD)

**ORDER RE JULY 13, 2026 DISCOVERY DISPUTE RE GOVERNMENT INVESTIGATIONS**

Re: Dkt. Nos. 137, 138, 166, 171

The parties ask the Court to resolve their dispute regarding documents responsive to plaintiffs' RFPs 2-4 that were received and produced by defendants in connection with seven government investigations relating to Block, Inc. ("Block"). Dkt. No. 137.[1] The Court held a hearing on this dispute on August 4, 2026 and asked the parties to exchange additional information. Dkt. Nos. 156, 159, 169. At the Court's direction, the parties jointly filed a status report regarding their efforts to resolve this dispute. Dkt. No. 166. The parties filed a correction to a portion of this status report on August 20, 2026. Dkt. No. 171.[2]

---

[1] Plaintiffs move to seal portions of the discovery letter revealing information Block claims is confidential. Dkt. No. 138. In its responsive statement (Dkt. No. 148), Block narrowed the scope of the discovery letter contents for which Block says sealing is warranted. As plaintiffs' sealing motion relates to a discovery matter, the good cause standard applies. *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). Good cause appearing, the Court grants plaintiffs' sealing motion, as narrowed by Block. The Court finds no basis to seal the contents of this order, which reflect matters that are discussed in publicly filed documents and at the August 4, 2026 hearing held in open court.

[2] The Court will separately address the motions to seal portions of the parties' August 12, 2026 status report and August 20, 2026 corrected status report.

For the reasons explained below, the Court orders defendants to produce to plaintiffs the documents defendants previously produced to the DOJ, subject to the limitations explained below. Defendants need not produce any other documents responsive to RFPs 2-4.[3]

## I. BACKGROUND

In this consolidated shareholder derivative action, plaintiffs assert claims for violations of the securities laws, breach of fiduciary duty, and insider trading against nominal defendant Block and its current and former officers and directors. *See* Dkt. No. 90. Plaintiffs contend that defendants intentionally failed to implement adequate internal controls to detect and prevent illegal conduct on Cash App platform, including failing to comply with regulations that require verification of customers' identities, ignoring and failing to report suspicious activity, and underfunding Cash App's compliance efforts. As a result, Cash App became the preferred payment application for fraudsters, money launderers, and other criminals. Dkt. No. 97-2; Dkt. No. 112. Plaintiffs further allege that the individual defendants misled shareholders regarding Block's investment in regulatory compliance and its success in attracting users, while causing Block to repurchase shares of the Company's stock at artificially inflated prices. *Id.* Finally, plaintiffs allege that some of the individual defendants breached their fiduciary duties by selling Block shares while knowing that Block's compliance program was deficient. *Id.*

This dispute concerns plaintiffs' requests for defendants' production of all documents, responsive to RFPs 2-4, produced or received in connection with any of the following seven government investigations defendants identified in an interrogatory answer: (1) CFPB, (2) NYDFS, (3) Multi-State Money Transmission Regulators, (4) SEC, (5) DOJ, (6) FinCEN, and (7) State Attorneys General. Dkt. No. 137 at 1 n.1; Dkt. No. 166 at 1-5. Defendants resist the "wholesale" reproduction of the materials previously produced in these investigations to plaintiffs, while plaintiffs argue that such reproductions are commonplace in actions like this. Dkt. No. 137

[3] On August 12, 2026, NYC Funds filed a statement of interest regarding this discovery dispute. Dkt. No. 167. The Court declines at this time to enter an order extending the proceedings on the present discovery dispute, or dictating the scope of discovery or production in the securities class action, *Gonsalves v. Block, Inc.*, No. 5:25-cv-00642-NW. To the extent NYC Funds seeks resolution of a discovery dispute in *Gonsalves*, the parties to that action shall proceed in compliance with the discovery dispute procedures in the Court's Standing Order for Civil Cases.

at 4, 5-6.

## II. DISCUSSION

A party may obtain discovery of any nonprivileged matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

It appears from the parties' status report that for five of the seven government investigations, the subject matter of the investigation overlaps, at least in part, with the scope of this action, as follows:

1. NYDFS – Block's customer identification procedures and compliance with anti-money laundering measures for the Cash App platform.
2. DOJ – the allegations raised in the March 2023 Hindenburg report, on which many allegations in plaintiffs' complaint also rely.
3. SEC – the allegations raised in the March 2023 Hindenburg report, on which many allegations in plaintiffs' complaint also rely.
4. CFPB – Block's responses to fraud complaints regarding transactions on the Cash App platform.
5. State Attorneys General – Block's efforts to prevent fraud on the Cash App platform, including maintenance of compliance programs.

*See* Dkt. No. 166 at 1-5.

The Court agrees with plaintiffs that where there is significant overlap between an investigation and the subject matter of the litigation, the documents produced by that party to government investigators are likely to contain relevant information. *See, e.g., Rumble, Inc. v. Google LLC*, No. 21-cv-00229-HSG (LJC), 2023 WL 3751797, at *6, *10 (N.D. Cal. May 31, 2023) (finding that plaintiff "appropriately seeks discovery" of documents produced in specific government antitrust investigations "concerning the origins, purpose, and context for Google's

allegedly anticompetitive conduct," but enforcing prior agreement to apply ESI search terms to those collections); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-2200-HSG (KAW), 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (reviewing authority and ordering production of documents from prior litigation with "significant factual and legal overlap"); *Garrison v. Oracle Corp.*, 14-cv-4592 (N.D. Cal.), Dkt. No. 73 at 1 (ordering Oracle to produce all documents produced to DOJ during investigation); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1101 (N.D. Cal. 2007) (after lifting discovery stay, ordering defendants to "produce to plaintiffs' lead counsel all documents produced to the government in its current antitrust investigation"). Indeed, defendants often produce such materials without requiring a Court order. *See, e.g., Crowder v. LinkedIn Corp.*, No. 22-cv-00237-HSG (LB), 2026 WL 1906768, at *5 (N.D. Cal. July 1, 2026) ("LinkedIn has agreed to reproduce the non-duplicative materials from the FTC investigation and the two related litigations by reproducing the *Klein* production, which it asserts encompasses all documents produced in the other two proceedings."); *Lamartina v. VMWare, Inc.*, 20-cv-2182 (N.D. Cal.), Dkt. No. 114 (transcript at 40:22-25) (defendant reproduced to plaintiff all 75,000 pages previously produced by defendant to SEC).

The Court has considered the parties' joint status report (including the corrections to that report), as well as their respective proposals for resolution. *See* Dkt. No. 166. It appears that the documents produced to the DOJ substantially subsume smaller document productions made to the SEC, the NYDFS, and the Washington Attorney General, and that the DOJ document collection overlaps substantially with the subject matter of this action. While the CFPB and State Attorneys General investigations also overlap somewhat with the subject matter of this action, those investigations principally concern different subject matter. The Washington Attorney General investigation concerns subject matter unrelated to this action.[4]

In these circumstances, this dispute can be narrowed to the question of whether defendants should be required to produce documents from the DOJ collection. Plaintiffs have demonstrated that there is a high degree of overlap between the DOJ investigation and the claims and defenses

[4] Defendants advise that no documents have been produced in connection with the FinCEN and Multi-State Regulators matters. Dkt. No. 166 at 5.

in this action, but that a substantial number of unique documents from that investigation have not been produced in this action. For this reason, the Court concludes that the documents defendants previously produced to the DOJ are likely relevant and not duplicative of the discovery plaintiffs have obtained to date. However, defendants argue that requiring them to produce these documents and to review them for privileged SAR and CSI material is unduly burdensome. Dkt. No. 137 at 6-7; Dkt. No. 166 at 6-8. Plaintiffs respond that defendants need not review the DOJ collection but may produce it as it was produced to the DOJ. Dkt. No. 137 at 4; Dkt. No. 166 at 8. The parties disagree on the extent to which the DOJ collection contains privileged SAR and CSI material.

Plaintiffs propose that defendants produce the entirety of the DOJ collection, except that defendants may omit the transaction-level customer data that collection contains. Dkt. No. 166 at 8. Defendants propose that their production be limited to the documents within the DOJ collection that hit on the parties' agreed-upon search terms for the period January 1, 2020 through June 30, 2025, and excluding transaction-level customer data. *Id.* at 6-7. While defendants express concern about the burden of reviewing the DOJ collection, the principal burden seems to be the need to review the DOJ materials for SAR and CSI material. During the August 4, 2026 hearing, Block's counsel advised the Court that while the DOJ does not have its own CSI privilege with respect to Block, the collection contains other regulators' CSI materials. Counsel explained that Block "received limited waivers to produce CSI material to the . . . DOJ, which do[ ] not extend to [this action]." Dkt. No. 169 at 33:20-23.

The Court concludes that the burden of reproducing the DOJ collection to plaintiffs is not disproportionate, given the relevance of the documents within that collection. The Court adopts plaintiffs' proposal and orders defendants to produce all nonprivileged documents in the DOJ collection, except for the transaction-level customer data. Defendants' obligation with respect to RFPs 2-4 is limited to documents produced, and testimony provided, to the DOJ; defendants need not produce materials *received from* the DOJ, unless such materials are necessary to understand what defendants produced or provided. With respect to any CSI material within the DOJ collection, defendants shall promptly contact the regulators who hold the privilege and seek

United States District Court
Northern District of California

permission to produce the CSI material in this action. Defendants shall prepare a log of any CSI or SAR material withheld from production of the DOJ collection. Defendants need not produce documents responsive to RFPs 2-4 for any of the other government investigations identified in the July 13, 2026 discovery dispute letter.

**IT IS SO ORDERED.**

Dated: August 24, 2026

Virginia K. DeMarchi
United States Magistrate Judge